**Jeremy R. ROUSH, Appellant,**

v.

**Jessica K. ROUSH, Respondent.**

**No. WD 66034.**

Missouri Court of Appeals,
Western District.

June 27, 2006.

**14**

Janet W. Larison, Grant City, MO, for Appellant.

Jessica K. Roush, Albany, MO, Respondent Acting Pro Se.

Before: RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and ROBERT G. ULRICH, JJ.

ROBERT ULRICH, Judge.

Jeremy Roush (Father) appeals the judgment of the trial court dissolving his marriage to Jessica Roush (Mother), awarding joint physical custody of the parties' four minor children and sole legal custody to Mother, and ordering him to pay $602 per month in child support. Father raises four points on appeal claiming that the custody award was against the weight of the evidence and misapplied the law and that the presumed child support amount ordered by the court was inappropriate. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded with directions.

### Facts

Father and Mother were married March 14, 1999, in Worth County, Missouri. They had four children: Tylar, born March 13, 1999;[1] Bryson, born July 17, 2001; Corbin, born April 10, 2002; and Kyleen, born October 22, 2003. The parties separated on March 15, 2004. Father continued to reside in Grant City in Worth County, and Mother moved with the four children to Pattonsburg, Missouri. On April 4, 2004, Mother and the four children moved to Mount Vernon in southern Missouri. On April 20, 2004, while Tylar, Bryson, and Kyleen were staying at the home of Brenda Ball, Mother's cousin, Father acquired the three children without notifying Mother and took them back to his home in northern Missouri where they then resided. Father filed his petition for dissolution of marriage on May 3, 2004. Trial was held in June and July of 2005.

Following trial, the court entered its judgment dissolving the parties' marriage and awarding the parties' joint physical custody of the minor children with sole legal custody to Mother. The court designated Mother's residence as the children's address for educational and mailing purposes. It set out specific times for Father's physical custody of the children including every third weekend from Friday evening until Sunday evening, during the summer school vacation from one week after the dismissal of school until one week prior to the commencement of school, and certain holidays. The court also ordered

---

1. Father admitted and the trial court found on the petition for declaration of paternity that Father is the father of Tylar.

Father to pay $602 per month child support. This appeal by Father followed.

## Child Custody

■ In his first three points on appeal, Father contends that the trial court's judgment regarding custody of the minor children was against the weight of the evidence and misapplied the law. Specifically, he asserts that two particular findings by the trial court were not supported by the evidence and that Mother's testimony was not credible.

■ In a child custody case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Purdun v. Purdun*, 163 S.W.3d 598, 600 (Mo. App. W.D.2005). Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence. *Purdun*, 163 S.W.3d at 600. The trial court's determination in custody matters must be given greater deference than in other cases. *Id.* (quoting *Scott v. Scott*, 147 S.W.3d 887, 895 (Mo.App. W.D. 2004). The trial court's child custody determination will not be disturbed unless the appellate court is firmly convinced that the welfare of the child requires some other disposition. *Miers v. Miers*, 53 S.W.3d 592, 595 (Mo.App. W.D.2001).

■ Custody is determined in accordance with the best interests of the child. § 452.375.2, RSMo Cum.Supp.2005; *Purdun*, 163 S.W.3d at 600. The trial court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved . . . . ;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2.

In his first two points on appeal, Father specifically challenges the trial court's findings on two of the factors under section 452.375.2. He first challenges the findings regarding factor (3). Those findings were:

The children will be able to interact and have interrelationships with both parents and their siblings as well as other persons under the parenting plan herein stated by the court.

In arguing that the findings were against the weight of the evidence, he cites evidence that the extended family of both parties resides in Gentry and Worth Counties, that the minor children's half sibling

resides in Gentry County with Mother's mother, that Mother left north Missouri to get away from, not only Father, but her family, and that Mother is no longer getting along with her extended family in south Missouri.

Father also challenges the findings of the trial court regarding factor (4). Those findings were:

The [Mother] is more likely to allow the children frequent, continuing and meaningful contact with the [Father] as shown by the testimony regarding the removal of the children from the physical custody of the [Mother] following separation of the parties and the denial of visitation to the [Mother] by the [Father] thereafter.

In arguing that the findings were against the weight of the evidence, Father cites evidence that Mother took the minor children from north Missouri to south Missouri without notice to Father and without providing him a telephone number or address to locate the children, that Father had attempted to solve the problem of custody and visitation during the pendency of the action soon after he filed his petition for dissolution, and that Mother kept the minor children in her care away from Father.

Finally, Father argues in point three that the trial court's judgment was against the weight of the evidence because Mother's testimony was not credible.

■ While most of the evidence in this case was conflicting, the evidence was undisputed that soon after the parties separated, Father acquired three of the children from Mother's cousin's house and took them back to his home in northern Missouri without notifying Mother. Father admitted this at trial. Furthermore, a children's service worker who completed a home study of Father's home testified that Father told her Mother left in April

taking Corbin with her but leaving the other three children with him. He did not tell her that he obtained the children in southern Missouri without Mother's permission. Mother testified that she had only seen the three children in Father's custody one time from April 2004 until the time of trial in the summer of 2005. While Father testified that he told Mother she could see the children anytime she wanted, Mother testified that other than the one time, Father did not allow her to see the children despite her numerous requests to see them. A parent's history of denying the other parent meaningful contact with a child may be considered in determining custody. *Purdun,* 163 S.W.3d at 601.

Furthermore, the evidence showed that the minor children would be able to interact and have interrelationships with their parents, their half-brother, who lived with Mother's mother, and other extended family under the custody award of the court. While evidence was offered that Mother did not have a good relationship with her extended family, the judgment and evidence revealed that Father was awarded significant periods of physical custody, every third weekend and summer vacation, and that the children regularly saw their paternal and maternal grandmothers, their half-brother, their uncle, and Mother's cousin while in Father's custody. Mother also testified that she was attempting to gain custody of her oldest son.

■ Appellate courts should exercise the power to set aside a decree or judgment as "against the weight of the evidence" with caution and only with a firm belief that the decree or judgment is incorrect. *Id.* When conflicting evidence is presented, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony. *Id.* "The mere existence of

evidence from which another conclusion might have been reached is not enough to demonstrate that the holding of the trial court is contrary to the weight of the evidence." *Id.* at 601–02.

In this case, the evidence conflicted on just about every issue concerning custody. Both parties testified and presented several witnesses, mostly extended family members, who testified about the circumstances of Mother's moving to southern Missouri, Father's taking custody of three of the children and moving them back to his home, the parenting ability of each party, the home life of each parent, and the parties' willingness to allow the children contact with the other. Potential biases of many of the witnesses were exposed. The trial court had discretion to determine the credibility of the witnesses, including Mother, and to resolve the conflict in the evidence. This court will defer to that discretion. *Foster v. Foster*, 149 S.W.3d 575, 579 (Mo.App. W.D.2004). The trial court's findings regarding the statutory factors were not against the weight of the evidence, and substantial evidence supported the court's judgment. Points one, two, and three are denied.

### Child Support

In his last point on appeal, Father claims that the trial court's child support award was against the weight of the evidence and misapplied the law. Specifically, he asserts that the presumed child support amount ordered by the court was inappropriate because the trial court apparently rejected Mother's Form 14, which was the only Form 14 introduced into evidence, but did not prepare its own Form 14 or otherwise set forth how it determined the presumed child support amount.

An award of child support is within the sound discretion of the trial court. *Schriner v. Edwards*, 69 S.W.3d 89, 92 (Mo.App. W.D.2002). A child support award will not be reversed unless the evidence is "palpably insufficient" to support it. *Id.*

In determining child support awards in compliance with Rule 88.01 and section 452.340, RSMo Cum.Supp.2005, the trial court must follow a two step procedure. *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997); *Timmons v. Timmons*, 132 S.W.3d 906, 910(Mo.App. W.D.2004); *Woolridge v. Woolridge*, 915 S.W.2d 372, 378–79 (Mo.App. W.D.1996). First, the trial court must "determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation." *Timmons*, 132 S.W.3d at 911 (quoting *Woolridge*, 915 S.W.2d at 379). In determining the presumed child support amount, the trial court can either accept one of the parties' Form 14 calculations or reject the parties' Form 14s and make its own calculation. *Id.* After the trial court has determined the correct Form 14 amount, the second step requires the court "to consider whether to rebut the presumed correct child support amount . . . as being unjust or inappropriate after consideration of all relevant factors." *Id.* (quoting *Woolridge*, 915 S.W.2d at 379).

In step one, when the trial court finds the parties' Form 14 calculations to be incorrect and rejects them, the court "has a duty under the rule to do its own correct Form 14 calculation and the failure to do so is reversible error." *Id.* (quoting *Woolridge*, 915 S.W.2d at 381). The trial court can do its own Form 14 calculation by either completing a Form 14 and making it part of the record or by articulating on the record how it calculated its Form 14 amount. *Id.* (quoting *Woolridge*, 915 S.W.2d at 382). The lack of specific findings as to how the trial court calculated its Form 14 will not, however, automatically trigger a reversal on appeal provided the

record clearly indicates how the trial court arrived at its Form 14 amount. *Id.* (quoting *Woolridge*, 915 S.W.2d at 382).

Mother was the only party to file a Form 14 in this case. She also filed a proposed parenting plan proposing Father be awarded physical custody on alternating weekends. Even though Mother's Form 14 is not in the record on appeal for this court to review, Father argues that the trial court had to have rejected Mother's Form 14 because it awarded Father significantly more physical custody of the children, every third weekend and summer vacation, which would have affected the calculation of the presumed child support amount, specifically the adjustment on Line 11 for portion of amounts expended during periods of overnight custody. The only finding in the judgment or record concerning the calculation of child support was, "That the presumed child support pursuant to Rule 88.01 is $602.00 and is not rebutted." The record does not include Mother's or the court's Form 14. The record does not indicate how the trial court arrived at the presumed child support amount. Because the record is inadequate regarding the calculation of the presumed child support amount, that portion of the judgment is reversed, and the case is remanded to the trial court for calculation of the correct amount of child support following the two-step procedure. *Simon–Harris v. Harris*, 138 S.W.3d 170, 176 (Mo.App. W.D.2004). The last point is granted.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded with directions.

HOLLIGER, P.J. and LOWENSTEIN, J. concur.