**Junee' Renita SCHUPBACH, Respondent,**

v.

**Steven Dale SCHUPBACH, Appellant.**

**No. 28689.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 23, 2008.

Timothy J. Harris, Springfield, for respondent.

Richard D. Bender, Springfield, for appellant.

ROBERT S. BARNEY, Judge.

Appellant Steven Dale Schupbach ("Husband") appeals the trial court's judgment dissolving his marriage to Respondent Junee' Renita Schupbach ("Wife"). In its "First Amended Judgment and Decree of Dissolution of Marriage," the trial court, *inter alia*, adopted Wife's proposed parenting plan as it related to custody and visitation of the parties' minor children.[1] In his sole point relied on, Husband challenges the trial court's adoption of Wife's proposed parenting plan and asserts it is "not the custody arrangement which will assure that both parents will have frequent, continuing and meaningful contact with their children...." We affirm the judgment of the trial court.

The record reveals the parties were married on June 6, 1986, and separated in November of 2003. The parties' children attend school in Clever and since the time of their separation Husband and Wife have resided approximately five to six miles from one another in Clever. Husband and Wife testified the children were coping well with the dissolution of their parents' marriage and were average, well-adjusted children, who excelled at school.

There was evidence presented at trial that there were several problems with the marriage which led to its dissolution. There was testimony from both parties that during the marriage Husband had a problem with alcohol, but that he had since taken control of the problem by attending Alcoholics Anonymous meetings and has been sober since June of 2005. Additionally, there was testimony that the parties had difficulty communicating throughout their marriage and there was possible infidelity on the part of Wife.

At the time of trial, Wife, who vacated the marital home with the children when the parties separated, was maintaining her own residence and was working as a self-employed housekeeper. Wife was also attending college classes in an effort to complete her degree in elementary education. Husband also vacated the marital residence at the time of separation and moved in with his parents where he resided at the time of trial. During the course of the parties' marriage, Husband worked as a farmer on his family's farm; however, in December of 2005, Husband became employed as a maintenance worker at the Carlisle plant in Springfield, Missouri. Husband testified that his work schedule had changed several times during his current employment and, at the time of trial,

---

1. There were three children born of the marriage: Sara, who was born in 1991; John, who was born in 1993; and Steven, who was born in 1996.

he was anticipating working "[f]our nights on and four days off" from 7:00 p.m. until 7:30 a.m. per shift.

Between the date of the parties' separation and the time of trial, the parties had been exercising a custody schedule whereby Husband had custody of the children every other weekend from Friday evening to Sunday evening and one weeknight per week. Otherwise, the children were in Wife's custody. Both parties testified that this particular custody plan had been working and that the children exhibited no negative effects from the custody arrangement in effect at the time of trial.

At trial, both parties proposed parenting plans to the trial court. Wife's parenting plan, which substantially mimicked the custody arrangement the parties had been utilizing prior to trial, proposed: joint legal custody and joint physical custody with Wife's residence used for educational and mailing purposes; Husband would have custody of the children from Friday evening to Sunday evening on alternating weekends and one weeknight per week; a standard alternating holiday and special day schedule based on an odd-even year rotation; and each party would get two continuous weeks in the summer for vacation periods. Wife testified that both parties were fit and proper to have custody of the children and that she has given Husband more time with the children when he has requested it.

Husband's proposed parenting plan suggested, among other things, that he and Wife would have joint legal custody and joint physical custody with Wife's residence used for educational and mailing purposes; he would have custody of the children three of the four days he was off work per week; two weeks for summer vacation in both July and August; and a standard alternating holiday and special day schedule based on an odd-even year rotation.[2]

Husband testified that under his proposed parenting plan custody of the children would rotate and change each week based on his work schedule where he worked four days on and four days off. Husband admitted he worked a "pretty weird schedule" and that it would "[p]robably not" be "a good schedule for teenagers to have to try to follow." Further, Husband testified that Wife has given him extra time with the children on occasion, but she sometimes denied his requests to see the children outside the set visitation times.

After taking into consideration those factors set out in section 452.375.2[3] and

**2.** In that Husband has failed to provide this Court with a copy of his proposed parenting plan which was rejected by the trial court, we have gleaned the terms recited from the transcript. We note it was Husband's responsibility to provide this Court with all documents necessary to decide the issues. Rule 81.12(c), Missouri Court Rules (2007).

**3.** Section 452.375.2, RSMo Cum.Supp.2005, sets out:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

finding Wife's parenting plan was in the best interest of the children, the trial court adopted Wife's parenting plan in its Judgment and Decree of Dissolution of Marriage. This appeal by Husband followed.

Husband's sole point relied on maintains the trial court erred in adopting Wife's proposed parenting plan and in failing to adopt Husband's proposed parenting plan because "Wife's plan is not the custody arrangement which will assure that both parents will have frequent, continuing and meaningful contacts with their children...." Specifically, he asserts Wife's proposed parenting plan "does not allow the children to have valuable contact with Husband due to Husband's work schedule" because "it is easy to demonstrate that there will be months during the year when Husband is working at some time during every weekend of the month."

"In a child custody case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Roush v. Roush,* 195 S.W.3d 12, 15 (Mo.App.2006). In that "the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Id.* "The trial court's determination in custody matters must be given greater deference than in other cases." *Id.* An appellate court will not disturb a custody ruling unless it is "firmly convinced that the welfare of the child requires some other disposition." *Id.; see also Miers v. Miers,* 53 S.W.3d 592, 595 (Mo.App.2001).

It has long been held that "it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child...." § 452.375.4, RSMo Cum.Supp.2005. It is the province of the trial court to "determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child." *Id.*

Here, both parties testified that prior to trial the children resided at Wife's home with Husband having visitation every other weekend as well as one weeknight per week. This arrangement seemed to have been working and both parties acknowledged Wife had allowed Husband visitation in excess of this agreement. While we note Husband's work schedule was previously different than the four days on and four days off schedule presently at issue, there was testimony that the children seemed to suffer no ill effects from the prior custody arrangement and it was agreeable to the parties for a long period of time. Additionally, the children in this matter are ages sixteen, fourteen, and eleven and are involved in sports and other school activities outside the home such that the previous schedule proposed by Wife would be a comfortable and predictable arrangement for the children. Even Husband admitted his proposed custody schedule would "[p]robably not" be "a good schedule for teenagers to have to try to follow." Further, the record reveals Husband and Wife have been able

(5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....

(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian.

to successfully make and negotiate changes to the custody arrangement in the past as either party needed and there is nothing in the record to suggest they could not otherwise do so in the future. Wife's proposed parenting plan also makes allowances for "additional parenting time as may be reasonable." While it is important for a parent to "have frequent, continuing and meaningful contact with [his] children ...," a parenting plan must still be "in the best interests of the child[ren]." § 452.375.4, RSMo Cum.Supp.2005. We are not "firmly convinced" that the welfare of the children requires a disposition other than that contained in Wife's proposed parenting plan which was adopted by the trial court. *Miers,* 53 S.W.3d at 595. The trial court did not err in adopting Wife's parenting plan. Point denied.

The judgment of the trial court is affirmed.

LYNCH, C.J., and SCOTT, P.J., concur.