

# Missouri Court of Appeals

## Southern District

### Division One

A.J.C., a minor, by and through her            )
Next Friend, J.D.C., JR., and                  )
J.D.C., JR., Individually,                      )
                                                )
    Petitioners-Respondents,        )
                                                )
    vs.                              )      No. SD35978
                                                )
K.R.H.,                                         )      Filed:  June 4, 2020
                                                )
    Respondent-Appellant.           )

### APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable Sandra M. West, Special Judge

### REVERSED IN PART, AFFIRMED IN PART, AND REMANDED

K.R.H. ("Mother") appeals the trial court's judgment[1] determining custody of

A.J.C. ("Child").  On appeal, Mother argues that the trial court erred in:  excluding the

testimony of Child's maternal grandmother regarding additional statements made by

Child regarding sexual abuse (Point I); excluding certain opinion testimony by Child's

counselor (Point II); awarding sole legal custody to J.D.C., Jr. ("Father") as being in

Child's best interest (Point III); awarding Mother joint physical custody every other week

---

[1] The parties stipulated to consolidation of three actions:  a petition for adult abuse (17AL-FC00001); a petition for child protection (17AL-FC00002); and a paternity action (17AL-FC00323).

if she resided in Willow Springs but only every other weekend if she resided in Ozark (Point IV); denying Mother access to school and medical records of Child (Point V); and awarding Father attorney's fees (Point VI). Finding merit in Point V, we reverse and remand on that issue but affirm on all others.

## Facts and Procedural Background

The evidence is set forth in the light most favorable to the trial court's judgment. *In Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017); *In re C.J.G.*, 75 S.W.3d 794, 797 (Mo.App. W.D. 2002).

Father and Mother are the biological parents of Child. Child was born in August 2012. From Child's birth to September 2016, Mother and Father lived together. Mother and Father separated in September 2016, at which time Father moved out of the home. After their separation, Father and Mother had an informal agreement where Father was allowed to visit Child two days a week. That arrangement continued until late December 2016. In late December 2016, Mother accused Father of sexual abuse of Child and denied him contact with Child.

In June 2017, Father filed a Petition for Declaration of Paternity alleging that he is the natural father of Child. Father filed a Proposed Parenting Plan requesting the legal residential address for Child be with Mother; an award for joint legal custody; and an award for joint physical custody to the parties, with alternating weeks of custody.

In August 2017, Mother filed her Answer and Counter-Petition, and her Proposed Parenting Plan. Mother did not dispute Father was the biological father of Child. Mother sought sole legal custody and sole physical custody of Child and requested no visitation rights be awarded to Father based on allegations of sexual abuse of Child, domestic abuse against Mother, and Father's history of drug abuse. Father filed his "Answer" (Reply) to

2

Mother's Counter-Petition, denying all allegations of sexual abuse against Child, domestic violence against Mother, and drug abuse, and stated Mother "should be required to reimburse . . . his attorney's fees and costs in proceeding in these matters to assert his parental rights and defend frivolous and meritless allegations of abuse of the minor child." However, Father did not request attorney's fees in his prayer for relief in his "Answer" (Reply) or in his petition seeking paternity. The court appointed a guardian ad litem ("GAL") for Child in September 2017.[2]

The case proceeded to trial and the court heard evidence. Father testified that he lives in Willow Springs and that he is the Father of Child. According to Father, he had a good relationship with Child until Mother accused him of sexually abusing Child. Father denied the allegations of sexual abuse.

Mother refused to allow Father to have any contact with Child for the approximately twenty-one months prior to trial after the allegations of sexual abuse. Father testified that because Mother would not let him see Child, Father went to Mother's place of employment on December 31, 2016, and broke the window out of a car Mother had borrowed out of frustration after Mother would not talk to him.[3] Father is currently being prosecuted for that action. Father has attended anger management class to help him cope with anger.

Janice Burns, Father's grandmother (Child's paternal great-grandmother), testified at trial. Ms. Burns lives with Father. Ms. Burns testified she has a close relationship with Child and she never saw Father act inappropriately around Child.

---

[2] At no point did the GAL meet with Child.

[3] In January 2017, Mother filed petitions seeking orders of protection against Father on her behalf and for Child.

Mother called her sister, Rachel Hunter ("Rachel"), and mother, Gloria Hunter ("Gloria"), as witnesses. Rachel testified that on December 21, 2016, Child told her Father had touched her "hoo hoo."[4] Rachel testified that she then told Mother of the statement.

Gloria testified that Child told her Father had touched her on the buttocks and vagina. When asked about similar disclosures Child made after December 21, 2016, Father's counsel objected, which was sustained.

Mother also testified. According to Mother, she and Child live in Ozark, Missouri, and moved there from Willow Springs in August 2018. Mother is currently a student at Drury University and Cox College[5] and works at Ozark Riverview Manor in Ozark. Mother moved, in part, to get away from harassment by Father's family.

Mother admitted she resisted all of Father's requests for contact with Child, resisted his requests to participate in counseling with Child, and had generally failed to provide any information to Father since December 2016. Father admitted an equally divided custody plan is not practical at this time.[6]

Mother testified that on December 21, 2016, Child told Rachel (Mother's sister) and Gloria (Child's maternal grandmother) that Father had touched her. Mother "hotlined" the allegation to child services, filed petitions for an order of protection and adult abuse order, and refused to allow Father to have contact with Child thereafter.

---

[4] The testimony throughout the case indicated that "hoo hoo" was a term Child's family used to refer to her private areas.

[5] Mother attends some classes online but testified that she does clinicals in Springfield, MO.

[6] Mother does not want Father to have any contact with Child, while Father would eventually like a 50/50 custody plan.

4

Mother took Child to an interview at the Child Advocacy Center ("CAC") on December 27, 2016. Mother testified that on the day of the CAC interview, prior to departing home, she told Child they were going to "speak with people" about what Child "had told grandma and Rachel." Mother further testified that "there could have been situations where [Child overheard her talking on the phone outside their home]," but only after the CAC interview of December 27, 2016.

Mother testified that following the CAC interview, she arranged for Child to attend counseling sessions with Laura Curtis, a licensed professional counselor. Child's first counseling session was in January 2017 and continued until May 2017.

Laura Curtis testified for Mother. Ms. Curtis testified that she counseled Child from January 5, 2017, until May 10, 2017, for a total of thirteen sessions. Child had follow-up visits in November and December 2017. During counseling with Ms. Curtis, Child twice said that Father touched her vagina and rectum. Ms. Curtis diagnosed Child with post-traumatic stress disorder. When Ms. Curtis was asked whether Child displayed any behaviors consistent with sexual abuse, Father's counsel objected, and the objection was sustained.[7] Mother's counsel made the following offer of proof:

> OFFER OF PROOF BY [MOTHER'S COUNSEL]:
> Q. Do you have an opinion based upon a reasonable degree of clinical certainty of whether or not [Child] behaved consistent with a child that's been a victim of sexual abuse, based upon your counseling sessions with her, wetting the pants, pooping the pants, the statements made about her father?
> A. Yes.
> Q. Okay. And what is that opinion?

---

[7] Father's counsel objected on the basis of speculation: "This witness has testified as to her involvement, which was strictly counseling in nature for a period of approximately five months." Ms. Curtis was then asked if she had any experience or training in treating children who have been the victim of sexual abuse, to which she replied, "sexual abuse specifically I would have to say no." Mother's counsel again asked if Ms. Curtis had "treated any children who have been the victim of sexual abuse?" Father's counsel further objected that Ms. Curtis' testimony was "outside the scope which she would be able to give any opinion on." The court then sustained the objection.

A. That means that the behaviors that she was exhibiting are commensurate with the trauma, and her trauma was the fact that Daddy touched me here and here, vagina and rectum.

[Mother's counsel]: That concludes my offer of proof, Judge.

Dr. Gabriel Cline, a licensed professional psychologist, also testified. Dr. Cline never met with Child but reviewed the videotaped recording of the CAC interview with Child. Dr. Cline expressed concerns about Child making statements about the alleged abuse shortly after the interview began, which is indicative that Child may have been "primed" or "coached" before the interview. Dr. Cline testified that Child's story was not consistent, that Child tried to disengage from the interviewer, and Child said she felt safe with Father. Dr. Cline opined that the interview was "inconclusive" to determine if there was "coaching or abuse or anything else."

Mother testified that there were several phone calls, text messages, e-mails and Facebook posts between Mother and Father that occurred from December 17, 2016, through December 23, 2016. On the initial cross-examination, Mother testified that Exhibit O was a complete history of the text conversations. During a subsequent cross-examination, however, Mother conceded that some messages were not included within the exhibit.[8]

The trial court found:

---

[8] Mother testified repeatedly that she did not intentionally omit any of the text messages; however, the trial court found:

> Counsel for [Father] brought to the Court's attention the fact that the text messages offered into evidence by [Mother] did not constitute the complete text message communications between the parties as evidenced by [Father's] transcripts of the parties' text message communications. Counsel for [Father] requested leave to file [Father's] transcript of text message communications between the parties and this Court granted leave. [Father's] transcripts of text messages between the parties were entered into evidence for purposes of impeachment. Upon being cross-examined by counsel for [Father], [Mother] admitted that she had redacted certain text messages from the transcript of text messages she offered into evidence.

The omitted text messages contained text messages from [Mother] to [Father] outlining her intent to make allegations of abuse to interfere with [Father's] custody and visitation and [Mother's] intent to alienate the affections of [Child] from [Father]. The text messages show that on December 19, 2016, [Mother] was upset because she believed that [Father's] Mother was using [Child] as leverage to press charges against [Mother's] sister. She told [Father] he could not see [Child] because of this. She told him that she had to be there for her sister in court. Later that night while discussing the custody plan [Mother] was offering and the custody [Father] wanted, [Mother] told [Father] his plan "isn't really a good idea considering her actions she has after being with you are starting to become extremely alarming." She next texts, "You'll find out after I take her to the therapist." Mother alleges [Child] then made a disclosure of sexual abuse by [Father] on Wednesday, December 21, 2016 regarding events that allegedly occurred on December 16, 2016, when [Father] last had custody of [Child]. This "disclosure" came the night before [Father] was supposed to get [Child] for his next visitation period. Then on December 22, 2016, the day after [Child] allegedly made the disclosures of abuse, [Mother] continued texting with [Father]. She told him that he could not pick up [Child] that day (Thursday) because of something [Child] said. He told her he did nothing wrong and that her going to court over his mom thing was not going to look good on her. She told him that his mom pulling a gun on her sister wouldn't look good either. He says that she brought the guns over. It appeared that [Mother] was more upset over the altercation between her sister and [Father's] mom than about [Child].

The trial court entered its Judgment. The trial court placed Child in the sole legal custody of Father. The parties were awarded joint physical custody of Child, with Mother having physical custody every other weekend if she remains in Ozark, but alternate weekly custody if she returns to Willow Springs. Father was awarded sole access to medical and health information related to Child. The trial court also awarded Father attorney's fees in the amount of $2,500.

In reaching its decision, the trial court found that text messages entered into evidence by Mother had been altered and redacted, which damaged her credibility. The court found:

based on [Mother's] contemptuous act in altering the evidence presented to the Court in an attempt to deceive this Court from her own threats to [Father] which document the course of action she took to put into action in an attempt to keep [Father] from having contact with his child for more than twenty months and to damage the bond and relationship between [Father] and the minor child support an award of attorney's fees and reimbursement to [Father]. The Court orders that [Mother] shall pay to [Father] as and for reimbursement in attorney's fees and costs in the amount of $2,500.00.

The trial court also found that the evidence presented did not establish that the sexual abuse occurred. Mother appeals the trial court's judgment.

### Point I—Excluding Gloria Hunter's testimony

In Mother's first point, she claims the trial court erred in excluding the testimony of Gloria Hunter as to the statements made by Child because such statements were an exception to the hearsay rule in that they reported allegations of sexual abuse by a child.

We give substantial deference to the trial court's determinations regarding the admissibility of evidence and will not disturb such determinations absent an abuse of discretion. *Interest of D.S.H. v. Greene County Juvenile Officer*, 562 S.W.3d 366, 369 (Mo.App. S.D. 2018). An abuse of discretion exists when a trial court's ruling is clearly against the logic of the circumstances before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *G.J.R.B. ex rel. R.J.K. v. J.K.B.*, 269 S.W.3d 546, 556 (Mo.App. S.D. 2008).

Additionally, we review the admission or exclusion of evidence for prejudice, not mere error. *Interest of D.S.H.*, 562 S.W.3d at 369. "An error in the admission of evidence is prejudicial if it affects the result or outcome of the trial." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 100 (Mo.App. W.D. 2006).

8

At issue is whether Gloria Hunter's testimony about Child's additional disclosures of sexual abuse constitute an exception to the hearsay rule. Hearsay is an out-of-court statement offered to prove the truth of the matter stated and is inadmissible unless the statement meets a recognized exception. *Id.* at 101.

> "Generally, courts exclude hearsay because the out-of-court statement is not subject to cross-examination, is not offered under oath, and is not subject to the fact finder's ability to judge demeanor at the time the statement is made. However, exceptions to the general prohibition against hearsay may apply when circumstances conspire to assure the trustworthiness of the declarant's statement despite the absence of cross-examination, the oath, and the fact finder's ability to observe the declarant's demeanor."

*Interest of D.S.H.*, 562 S.W.3d at 369 (quoting *Bynote v. Nat'l Super Markets, Inc.*, 891 S.W.2d 117, 120 (Mo. banc 1995)).

One exception to the hearsay rule is the exception articulated in *In re Marriage of P.K.A.*, 725 S.W.2d 78, 81-82 (Mo.App. S.D. 1987) ("the *P.K.A.* exception").

This exception

> "applies to non-jury sexual abuse cases where: (1) the best interest of the child is the primary concern; (2) sexual abuse may have occurred, or has been threatened; (3) the child might not be competent or reasonably expected to testify to it; and (4) there is a substantial basis that the statements are true."

*Interest of D.S.H.*, 562 S.W.3d at 369 (quoting *In Interest of S.M.*, 750 S.W.2d 650, 654 (Mo.App. E.D. 1988)).

Here, Mother's argument fails because Gloria Hunter *was* allowed to testify as to the initial disclosure on December 21. The issue was whether the trial court erred in excluding Gloria's testimony regarding Child's additional statements—statements that were, based on the offer of proof, substantively the same as the original disclosure. We need not decide whether such an exclusion was in error because Mother fails to

9

demonstrate prejudice—that the exclusion materially affected the outcome of the trial.

Mother's offer of proof offered only vague and duplicative descriptions of Child's

disclosures. Gloria testified that Child told her that she was angry that Father touched her

"hoo hoo." This testimony was allowed. The later-excluded testimony was the same—

Child was angry that her dad touched her "hoo hoo." There can be no prejudice where

the excluded evidence is substantively the same as the admitted evidence. Mother fails to

demonstrate prejudice. Point I is denied.

### Point II—Exclusion of testimony of Laura Curtis as to whether Child's behavior was consistent with sexual abuse

In Point II, Mother argues that the trial court erred in excluding Laura Curtis'

expert opinion testimony that the behaviors of Child were consistent with trauma caused

by sexual abuse. We disagree.

Whether a witness qualifies as an expert and whether that testimony will assist the

trier of fact is a matter within the trial court's discretion, and it will not be disturbed upon

appeal absent an abuse of that discretion. ***Whitnell v. State***, 129 S.W.3d 409, 413-14

(Mo.App. E.D. 2004). Missouri's expert witness statute, section 490.065[9] provides: "If

---

[9] Section 490.065.1, RSMo Cum.Supp. 2017, states in part:

> 1. In actions brought under chapter 451, 452, 453, 454, or 455 or in actions adjudicated in juvenile courts under chapter 211 or in family courts under chapter 487, or in all proceedings before the probate division of the circuit court, or in all actions or proceedings in which there is no right to a jury trial:
> (1) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise;
> (2) Testimony by such an expert witness in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact;
> (3) The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable;

scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert *by knowledge, skill, experience, training, or education* may testify thereto in the form of an opinion or otherwise[.]" Section 490.065.1(1) (emphasis added).

Mother fails to demonstrate Laura Curtis had the proper skill, knowledge, experience, training, or education to testify as to whether Child's behavior was consistent with sexual abuse. "An offer of proof must *specifically* show: (1) what the proffered evidence would be; (2) its object and purpose; and (3) all the facts necessary to establish its relevance and *admissibility*." ***Calzaretta v. Willard***, 391 S.W.3d 488, 493 (Mo.App. S.D. 2013) (emphasis added). Here, Mother's offer of proof relies on vague, conclusory statements that fail to specifically and definitively show how the witness's skill, knowledge, experience, training, or education would assist the trier of fact on the issue of whether Child's behaviors were consistent with sexual abuse.

Laura Curtis was asked whether she "had any experience or training in treating children who have been the victim of sexual abuse?" Her response was, "I'm certified in trauma focused cognitive behavioral therapy, which is an umbrella for all kinds of different trauma. But sexual abuse specifically I would have to say no." At no point did Mother offer any proof that Ms. Curtis' education, training, and skills qualified her to form opinions as to whether certain behaviors were consistent with sexual abuse. Her testimony may qualify her as an expert for purposes of testifying as to *treating* all types of trauma with cognitive behavioral therapy but there was nothing offered to demonstrate

---

(4) If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case.

she had any skills, knowledge, experience, training or education in *identifying or forming an opinion as to the cause* of that trauma – she specifically denied such skills.

Mother made the following offer of proof:

OFFER OF PROOF BY [Mother's Counsel]:
Q. Do you have an opinion based upon a reasonable degree of clinical certainty of whether or not [Child] behaved consistent with a child that's been a victim of sexual abuse, based upon your counseling sessions with her, wetting the pants, pooping the pants, the statements made about her father?
A. Yes.
Q. Okay. And what is that opinion?
A. That means that the behaviors that she was exhibiting are commensurate with the trauma, and her trauma was the fact that Daddy touched me here and here, vagina and rectum.
[Mother's Counsel]: That concludes my offer of proof, Judge.

The trial court properly sustained Father's objection because there was no foundation laid to demonstrate what *skill, knowledge, experience, training, or education* Curtis had that would assist the trier of fact in determining whether Child behaved consistently with a sexual abuse victim where Curtis specifically denied having such skills, knowledge, experience, training, or education. The trial court did not abuse its discretion in excluding Curtis' opinion as to the "cause" of Child's behavior. Point II is denied.

### Point III—Trial court's determination awarding Father sole legal custody was in best interest of Child was supported by substantial evidence.

### Standard of Review

"In a child custody case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Roush v. Roush*, 195 S.W.3d 12, 15 (Mo.App. W.D. 2006) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc

12

1976)). We will not disturb a custody ruling unless we are firmly convinced that the welfare of the child requires some other disposition. *Id.* "It is the province of the trial court to 'determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.'" *Schupbach v. Schupbach*, 265 S.W.3d 325, 328 (Mo.App. S.D. 2008) (quoting section 452.375.4, RSMo Cum.Supp. 2005).

> "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case. We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations. Due to that superior position, a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. Thus, any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence. Such contrary facts and inferences provide no assistance to this Court in determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it, and are, therefore, evidence from which the trier of fact can reasonably decide that the proposition is true."

*In re Marriage of Harris*, 446 S.W.3d 320, 332 (Mo.App. S.D. 2014) (quoting *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D. 2010)).

In the case before us, Mother acknowledges that the trial court "found that there was no credible evidence establishing that Father sexually abused child, which is obviously within the purview of the trial court as the trier of fact." As we said in *In re Marriage of Patroske*, 888 S.W.2d 374 (Mo.App. S.D. 1994):

> We do not minimize the seriousness of the allegations of sexual abuse in this or any case and have thoroughly reviewed the record. Resolution of the conflicts in evidence on this subject hinged largely on credibility. The

trial court, however, is in a far better position to evaluate the credibility of witnesses than an appellate court and the resolution of conflicting evidence concerning the relative fitness of parents for custody is left to the trial court with deference to be accorded its conclusions.

*Id.* at 383.

Mother offers no analysis explaining why the evidence favorable to the trial court's judgment when viewed in the light most favorable to it, lacks probative force upon the proposition that it was in the Child's best interest for Father to have sole legal custody. Point III is denied.

### Point IV-Terms of Parenting Plan based on Mother's residence

In Point IV, Mother argues that the trial court erred "in awarding her joint physical custody of [Child] every other week if she resided in Willow Springs but only every other weekend if she resided in Ozark" because the best interest of Child did not require a different joint physical custody schedule depending on Mother's residence. This point challenges the trial court's authority to base the amount of physical custody on Mother's residence. Because it is a challenge to the trial court's authority, it raises a question of law. We review questions of law *de novo*. **In Interest of J.L.H.**, 488 S.W.3d 689, 693 (Mo.App. W.D. 2016).

It is true that a trial court cannot restrict a custodial parent's residence to a particular area of the state when making its initial custody determination. **A.E.B. v. T.B.**, 354 S.W.3d 167, 170–71 (Mo. banc 2011). "'In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child.'" **In re Marriage of Dusing**, 654 S.W.2d 938, 942 (Mo.App. S.D.1983) (quoting **In re Marriage of Bard**, 603 S.W.2d 108, 109 (Mo.App. W.D. 1980)).

14

The Supreme Court of Missouri, in ***A.E.B. v. T.B.***, was tasked with determining whether section 452.375[10] allowed a trial court to *order* a parent to relocate back to a three-county area when making its initial custody determinations. 354 S.W.3d at 170-71. The court determined it did not:

> These statutes applicable to the trial court's initial custody determination provide the trial court no authorization to compel a party to relocate his or her residence. Section 452.375.2(7) authorizes a trial court making an initial custody determination to consider "[t]he intention of either parent to relocate the principal residence of the child," but this allowance for consideration of a party's choice to relocate in the future does not provide statutory authority to compel a party to relocate from his or her desired and existing residence as part of the custody judgment.[]
>
> In this case, the trial court had no statutory authority to order Mother to relocate her residence to Missouri as part of the section 452.375 initial custody determination. Lacking the statutory authority to compel Mother's move back to Missouri, the trial court also lacked the statutory authority to restrict Mother's residence with Child to a designated three-county area.

*Id.* at 171.

---

[10] The court's initial custody determination considers eight factors outlined in section 452.375.2, RSMo Cum.Supp. 2018, which provides in relevant part:

> The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
> (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
> (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
> (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
> (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
> (5) The child's adjustment to the child's home, school, and community;
> (6) The mental and physical health of all individuals involved . . . [;]
> (7) The intention of either parent to relocate the principal residence of the child; and
> (8) The wishes of a child as to the child's custodian....

Section 452.375.9 requires the trial court's custody judgment to include "a specific written parenting plan," which is entered in accordance with section 452.310, RSMo 2016, and the court's *discretionary determinations* about what is "in the best interest of the child."

Unlike ***A.E.B. v. T.B.***, however, we are not dealing with a judgment that *ordered* a parent to relocate or restricted her from moving. The trial court judgment gives Mother *more* time with Child *if* she were to live in Willow Springs. The amount of joint physical custody is merely limited to "every other weekend" if she continued to reside in Ozark (her residence at the time of trial). Logistical considerations are naturally relevant to the determination of Child's best interest. The trial court did not err in awarding Mother joint physical custody "every other weekend" if she remained at her current residence. Point IV is denied.

**Point V-Denying Mother access to school and medical records of Child**

In Point V, Mother claims the trial court erred in denying Mother access to Child's school and medical records pursuant to sections 452.375, RSMo Cum.Supp. 2018, and 452.376, RSMo 2016. This is an allegation that the trial court misapplied the law. Again, we review questions of law *de novo*. ***In Interest of J.L.H.***, 488 S.W.3d at 693.

The parties agree that the trial court erred in denying Mother access to Child's school and medical records. Point V is granted. The trial court is ordered to delete the portion of the order denying Mother access to Child's school and medical records.

**Point VI—Award of attorney's fees to Father**

Mother contends the trial court erred in awarding Father attorney's fees in Point VI because "[Father] did not request an attorney fee in his petition or ask for such a fee during his testimony or argument at trial." We disagree.

> "Parties to domestic relations cases generally are responsible for paying their own attorney's fees." *Serafin v. Serafin*, 493 S.W.3d 897, 902 (Mo. App. E.D. 2016). Section 452.340.7 provides that the court "shall also award, if requested and for good cause shown, reasonable

16

expenses, attorney's fees and court costs incurred by the prevailing party." In addition, Section 452.355.1 authorizes the trial court [to] award attorney's fees "after considering the financial resources of both parties, the merits of the case, and the actions of the parties during the proceedings." *Id*. Here, as part of his petition, Father requested the court enter his parenting plan which granted him sole legal and physical custody, and he also requested an award of his attorneys' fees.

. . . .

. . . "The trial court has broad discretion in awarding attorney's fees and its ruling is presumptively correct." *Id*. [at 903.] We will reverse a trial court's award of attorney's fees under Section 452.355.1 only if the trial court abuses that discretion. *Id*. "To demonstrate an abuse of discretion, the complaining party must prove that the award is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id*.

*S.F.G. by Next Friend A.E.R. v. A.M.G.*, 591 S.W.3d 907, 920-21 (Mo.App. E.D. 2019).

In the case before us, Mother had notice that Father was seeking attorney's fees in his paternity suit. Father did not request attorney's fees in his Petition for Declaration of Paternity, but he did include a sentence in his "Answer" to Mother's Counter-Petition where he denied the factual allegations in Count II and then added a sentence stating Mother "should be required to reimburse and . . . pay his attorney's fees and costs in proceeding in these matters to assert his parental rights." Point VI is denied.

The judgment is affirmed in part, reversed in part, and remanded.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs

17